UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Tareq Aqel Mohammed Aziz
    and
Ammar Aqel Mohammed Aziz,
    by their next friend,
Aqel Muhammad Aziz,

and

JOHN DOES 1-60,

    *Petitioners*,

v.

DONALD TRUMP, President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); JOHN KELLY, Secretary of DHS; KEVIN K. MCALEENAN, Acting Commissioner of CBP; and WAYNE BIONDI, Customs and Border Protection (CBP) Port Director of the Area Port of Washington Dulles,

    *Respondents*.

Case No. __1:17cv116_____

Date: January 28, 2017

**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. Petitioners Tareq Aqel Mohammed Aziz and Ammar Aqel Mohammed Aziz are two brothers of Yemeni nationality, who were granted Lawful Permanent Resident ("LPR") status by virtue of their status as immediate relatives of their father, a US citizen. Petitioners landed at Washington-Dulles International Airport ("IAD") on the morning of January 28, 2017, with plans to continue on to Michigan where their father was awaiting them. After conducting standard procedures of administrative processing and security checks, the federal government has deemed both Petitioners to be admissible to the United States as immigrants.

2. Despite these findings and Petitioner's valid entry documents, U.S. Customs and Border Protection ("CBP") blocked Petitioners from exiting IAD and detained Petitioners therein. No magistrate has determined that there is sufficient justification for the continued detention of either Petitioner. Instead, CBP is holding Petitioners at IAD – along with approximately 50-60 other LPRs, who are named herein as John Does 1-60 – solely pursuant to an executive order issued on January 27, 2017.

3. Because the executive order is unlawful as applied to Petitioners, their continued detention based solely on the executive order violates their Fifth Amendment procedural and substantive due process rights, violates the First Amendment Establishment Clause, is *ultra vires* to the immigration statutes, and violates the Administrative Procedure Act and Religious Freedom Restoration Act. Therefore, Petitioners respectfully apply to this Court for a writ of habeas corpus to remedy their unlawful detention by Respondents, and for declaratory and injunctive relief to prevent such harms from recurring.

4. Petitioners JOHN DOES 1-60 are approximately 50-60 lawful permanent residents of the United States, most of whom are returning from trips abroad, all of whom are nationals of one of the following seven countries: Lybia, Iraq, Iran, Yemen, Syria, Sudan, Somalia. All are presently being held against their will by CBP officers in the international arrivals area of Dulles Airport. All are being held in an area where other passengers disembarking from international flights can see and hear them; accordingly, there is no reason that their attorneys could not be permitted to meet with them.

5. There are currently at least twelve attorneys waiting outside the international arrivals area at Dulles Airport. They are not being allowed back to see John Does 1-60. Nor are they being allowed to see Petitioners, despite being retained by Petitioners' father to represent the Petitioners. The undersigned attorney Simon Sandoval-Moshenberg called a CBP supervisor, and accurately represented himself to be Petitioners' attorney, but was not given any information about Petitioners.

## JURISDICTION AND VENUE

6. Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331, 1361, 2241, 2243, and the Habeas Corpus Suspension Clause of the U.S. Constitution. This court has further remedial authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

7. Venue properly lies within the Eastern District of Virginia, Alexandria Division because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b).

8. No petition for habeas corpus has previously been filed in any court to review Petitioners' cases.

## PARTIES

9. Petitioner Tareq Aqel Mohammed Aziz is a 21-year-old citizen and national of Yemen. He was granted lawful permanent resident (LPR) status by the US Embassy in Djibouti, by virtue of being an immediate relative of a US citizen.

10. Petitioner Ammar Aqel Mohammed Aziz, is a 19-year-old citizen and national of Yemen. He was granted lawful permanent resident (LPR) status by the US Embassy in Djibouti, by virtue of being an immediate relative of a US citizen.

11. Aqel Muhammad Aziz is a US citizen. He is a resident of Flint, Michigan.

12. Petitioners JOHN DOES 1-60 are approximately 60 lawful permanent residents of the United States, all nationals of Syria, Lybia, Iran, Iraq, Somalia, Yemen or Sudan, who landed at Dulles Airport in the last 24 hours and are not being allowed to pass through international arrivals. They are being held at international arrivals against their will.

13. The U.S. Department of Homeland Security ("DHS") is a cabinet department of the United States federal government with the primary mission of securing the United States.

14. U.S. Customs and Border Protection ("CBP") is an agency within DHS with the primary mission of detecting and preventing the unlawful entry of persons and goods into the United States.

15. Respondent John Kelly is the Secretary of DHS. Secretary Kelly has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

16. Respondent Kevin K. McAleenan is the Acting Commissioner of CBP. Acting Commissioner McAleenan has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

17. Respondent Wayne Biondi is the Customs and Border Protection (CBP) Port Director of the Area Port of Washington Dulles, which has immediate custody of Petitioners. He is sued in his official capacity.

18. Respondent Donald Trump is the President of the United States. He is sued in his official capacity.

## STATEMENT OF FACTS

### President Trump's January 27, 2017 Executive Order

19. On January 20, 2017, Donald Trump was inaugurated as the forty-fifth President of the United States.

20. One week later, on January 27, at about 4:30pm, President Trump signed an executive order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States," which is attached hereto as Exhibit A and is hereinafter referred to as the "EO."

21. Citing the threat of terrorism committed by foreign nationals, the EO directs a variety of changes to the manner and extent to which non-citizens may seek and obtain admission to the United States, particularly (although not exclusively) as refugees. Among other

things, the EO imposes a 120-day moratorium on the refugee resettlement program as a whole; proclaims that "that the entry of nationals of Syria as refugees is detrimental to the interests of the United States," and therefore "suspend[s]" indefinitely their entry to the country; similarly proclaims that "the entry of more than 50,000 refugees in fiscal year 2017 would be detrimental to the interests" of the country.

22. Most relevant to the instant action is Section 3(c) of the EO, in which President Trump proclaims "that the immigrant and nonimmigrant entry into the United States of aliens from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States," and that he is therefore "suspend[ing] entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of this order," with narrow exceptions not relevant here.

23. There are seven countries that fit the criteria in 8 U.S.C. § 1187(a)(12): Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen. According to the terms of the EO, therefore, the "entry into the United States" of non-citizens from those countries is "suspended" from 90 days from the date of the EO.

**Petitioners' claim to lawful permanent resident status**

24. The Aziz brothers were granted immigrant visas by the U.S. Embassy in Djibouti, by virtue of their status as immediate relatives of their father, who is a US citizen.

25. They departed Addis Ababa, Ethiopia on a flight to Washington Dulles International Airport ("IAD") about two hours before President Trump signed the EO. The flight

6

made a stop in Dublin, Ireland, and then landed at IAD at around 8:00am on Saturday, January 28.

26. Upon information and belief, on arriving at IAD, the Aziz brothers were taken by unknown CBP agents at international arrivals, where they were held for the entire day and where they are still held.

27. In the afternoon of January 28, various attorneys retained by the Aziz brothers' father attempted to ascertain the whereabouts of Petitioners and to advocate for their release from CBP custody, but none of the attorneys were given any information or allowed to speak to Petitioners.

28. Petitioners are not being permitted to meet with their attorneys who are present at IAD and have made multiple attempts to meet with them.

29. Upon knowledge and belief, Petitioners remain in the custody of CBP, either at IAD or elsewhere in this District.

30. No grounds of inadmissibility under the Immigration and Nationality Act applies to either Petitioner, nor is there any reason under Title 8 of U.S. Code or Title 8 of the Code of Federal Regulations not to allow Petitioners to enter the United States as lawful permanent residents.

31. Congress has provided that lawful permanent residents in Petitioners' situation are entitled to enter the United States. Under 8 U.S.C. § 1101(a)(13)(C), a lawful permanent resident is regarded as seeking an admission into the United States for purposes of the immigration laws" only if he or she "has abandoned or relinquished that status," *id.* § 1101(a)(13)(C)(i), has been absent from the United States for more than 180 days continuously,

is in removal proceedings, has committed one of a class of enumerated offenses, or has attempted to enter without inspection.

32. None of the foregoing circumstances applies to Petitioners and therefore they are not deemed to be seeking admission and have a right to enter. *In re Collado–Munoz,* 21 I. & N. Dec. 1061, 1065-1066 (1998) (en banc) (requiring immigration judge to look to 8 U.S.C. § 1101(a)(13)(C) in determining whether lawful permanent resident was applicant for admission); *Vartelas v. Holder*, 566 U.S. 257, 132 S. Ct. 1479, 1484, 182 L. Ed. 2d 473 (2012) (citing *In re Collado-Munoz* and recognizing that the definition supersedes previous statute's definition of entry).

33. Respondents are also detaining Petitioners in violation of the Due Process Clause. In *Rosenberg v. Fleuti*, 374 U.S. 449, 462 (1963), the Supreme Court held that "an innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been intended as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an entry into the country on his return." (internal quotation marks and citations omitted); *see also Kwong Hai Chew v. Colding*, 344 U.S. 590, 601-02 (1953) (assimilating status, for constitutional purposes, of lawful permanent resident who had been abroad for five months to that of one continuously present). The Supreme Court reaffirmed this constitutional principle in *Landon v. Plasencia*, 459 U.S. 21, 31 (1982) (describing *Chew* as standing for the proposition that "a resident alien returning from a brief trip has a right to due process just as would a continuously present resident alien").

34. As lawful permanent residents of the United States, Petitioners are attempting to return home.

35. John Does 1-60 are, on information and belief, approximately 50-60 lawful permanent residents of the United States situated similarly to the Aziz brothers. None is being allowed access to counsel, notwithstanding the fact that there are over a dozen barred attorneys on the scene and willing to represent them *pro bono*. All are being denied entry into the United States and all are being told that they will be put on an airplane imminently.

## CAUSES OF ACTION

### COUNT ONE
### FIFTH AMENDMENT – PROCEDURAL DUE PROCESS
### DENIAL OF RIGHT TO ENTER UNITED STATES

36. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

37. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of liberty interests protected under the Due Process Clause of the Fifth Amendment. Additionally, due process requires that arriving immigrants be afforded those statutory rights granted by Congress and the principle that "[m]inimum due process rights attach to statutory rights." *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (alteration in original) (quoting *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996)).

38. The United States government is obligated by United States law to allow LPRs admission into the United States, unless those LPRs are for some reason inadmissible.

39. Petitioners and John Does 1-60 were unlawfully denied the right to enter the United States as LPRs, without due process, in violation of the due process rights guaranteed by the Fifth and Fourteenth Amendments.

40. In addition, they are being denied their right to counsel, by not being allowed to meet with attorneys who are present on the scene and willing to represent them *pro bono*.

## COUNT TWO
## FIRST AMENDMENT – ESTABLISHMENT CLAUSE

41. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

42. The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity. The EO therefore violates the Establishment Clause of the First Amendment by not pursuing a course of neutrality with regard to different religious faiths.

## COUNT THREE
## THE IMMIGRATION AND NATIONALITY ACT

43. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

44. The Immigration and Nationality Act and implementing regulations entitle Petitioners to enter the United States as LPRs. Respondents' actions in seeking to return Petitioners to Yemen, taken pursuant to the EO, deprive Petitioners of their statutory and regulatory rights.

## COUNT FOUR
## FIFTH AMENDMENT – EQUAL PROTECTION

45. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

46. The EO discriminates against Petitioners on the basis of their country of origin and religion, without sufficient justification, and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

47. Additionally, the EO was substantially motivated by animus toward—and has a disparate effect on—Muslims, which also violates the equal protection component of the Due Process Clause of the Fifth Amendment. *Jana-Rock Const., Inc. v. N.Y. State Dep't of Econ. Dev.*, 438 F.3d 195, 204 (2d Cir. 2006); *Hunter v. Underwood*, 471 U.S. 222 (1985).

48. Respondents have demonstrated an intent to discriminate against Plaintiffs on the basis of religion through repeated public statements that make clear the EO was designed to prohibit the entry of Muslims to the United States. *See* Michael D. Shear & Helene Cooper, *Trump Bars Refugees and Citizens of 7 Muslim Countries,* N.Y. Times (Jan. 27, 2017), ("[President Trump] ordered that Christians and others from minority religions be granted priority over Muslims."); Carol Morello, *Trump Signs Order Temporarily Halting Admission of Refugees, Promises Priority for Christians*, Wash. Post (Jan. 27, 2017).

49. Applying a general law in a fashion that discriminate on the basis of religion in this way violates Petitioner's rights to equal protection the Fifth Amendment Due Process Clause. *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999); *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886). Petitioner satisfies the Supreme Court's test to determine whether a facially neutral law – in the case, the EO and federal immigration law – has been applied in a discriminatory fashion. The Supreme Court requires an individual bringing suit to challenge the

application of a law bear the burden of demonstrating a "prima facie case of discriminatory purpose." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-7 (1977). This test examines the impact of the official action, whether there has been a clear pattern unexplainable on other grounds besides discrimination, the historical background of the decision, the specific sequence of events leading up to the challenged decision, and departures from the normal procedural sequence. *Id.*

50. Here, President Donald Trump and senior staff have made clear that EO will be applied to primarily exclude individuals on the basis of their national origin and being Muslim. *See, e.g.*, sources cited, *supra* ¶ 48, *See, e.g.*, Donald J. Trump, *Donald J. Trump Statement On Preventing Muslim Immigration*, (Dec. 7, 2015), https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration ("Donald J. Trump is calling for a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on."); Abby Phillip and Abigail Hauslohner, *Trump on the Future of Proposed Muslim Ban, Registry: 'You know my plans'*, Wash. Post (Dec. 22, 2016). Further, the President has promised that preferential treatment will be given to Christians, unequivocally demonstrating the special preferences and discriminatory impact that the EO has upon Petitioners. *See* sources cited, *supra* ¶ 48.

51. Thus, Respondents have applied the EO with forbidden animus and discriminatory intent in violation of the equal protection of the Fifth Amendment and violated Petitioners' equal protection rights.

## COUNT FIVE
## ADMINISTRATIVE PROCEDURE ACT

52. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

53. Respondents detained and mistreated Petitioners solely pursuant to an executive order issued on January 27, 2017, which expressly discriminates against Petitioners on the basis of their country of origin and was substantially motivated by animus toward Muslims. *See supra* Count Four.

54. The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity.

55. The INA forbids discrimination in issuance of visas based on a person's race, nationality, place of birth, or place of residence. 8 U.S.C. § 1152(a)(1)(A).

56. The INA and implementing regulations entitle Petitioners to enter the United States as LPRs.

57. Respondents' actions in detaining and mistreating Petitioners were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of APA § 706(2)(A); contrary to constitutional right, power, privilege, or immunity, in violation of APA § 706(2)(B); in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of APA § 706(2)(C); and without observance of procedure required by law, in violation of § 706(2)(D).

## COUNT SIX
## RELIGIOUS FREEDOM RESTORATION ACT

58.     Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59.     The EO will have the effect of imposing a special disability on the basis of religious views or religious status, by withdrawing an important immigration benefit principally from Muslims on account of their religion. In doing so, the EO places a substantial burden on Petitioners' exercise of religion in a way that is not the least restrictive means of furthering a compelling governmental interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners pray that this Court grant the following relief:

(1)     Issue a Writ of Habeas Corpus requiring Respondents to release Petitioners forthwith;

(2)     Issue an injunction ordering Respondents not to detain any Petitioners solely on the basis of the EO;

(3)     Enter a judgment declaring that Respondents' detention of Petitioners is and will be unauthorized by statute and contrary to law;

(4)     Award Petitioners reasonable costs and attorney's fees; and

(5)     Grant any other and further relief that this Court may deem fit and proper.

Respectfully submitted,


_____//s//_____    Date: 1/28/2017
Simon Y. Sandoval-Moshenberg (VA 77110)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike #520
Falls Church, VA 22041
(703) 720-5605 / cell (434) 218-9376
simon@justice4all.org

Andrew J. Pincus (pro hac vice motion forthcoming)
Paul W. Hughes
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-2000
apincus@mayerbrown.com
phughes@mayerbrown.com