IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| TAREQ AQEL MOHAMMED AZIZ, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-116 |
| | ) | |
| DONALD TRUMP, President of the United States, et al., | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

**BRIEF IN SUPPORT
OF THE COMMONWEALTH OF VIRGINIA'S
MOTION FOR THE ISSUANCE OF A RULE TO SHOW CAUSE**

Mark R. Herring
Attorney General of Virginia

Trevor S. Cox (VSB No. 78396)
Deputy Solicitor General
tcox@oag.state.va.us

Matthew R. McGuire (VSB No. 84194)
Assistant Attorney General
mmcguire@oag.state.va.us

Stuart A. Raphael (VSB No. 30380)
Solicitor General

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
sraphael@oag.state.va.us

*Counsel for Commonwealth of Virginia*

February 1, 2017

The Commonwealth of Virginia respectfully requests the issuance of a rule to show cause why respondents should not be held in contempt of this Court's temporary restraining order (TRO) entered on the evening of January 28, 2017. Contemporary news reports and first-hand accounts indicate that officials of respondent Customs and Border Protection (CBP) did not comply with the Court's directive in paragraph (a) that "respondents shall permit lawyers access to all legal permanent residents being detained at Dulles International Airport." Moreover, because such access was not provided and respondents have not disclosed, despite request, whether any such persons were removed from the United States after they knew of the TRO, it cannot be determined whether respondents complied with the prohibition on such removal in paragraph (b). The Commonwealth has attempted since Sunday, January 29, to obtain that information, but respondents have not answered. Under these circumstances, the Court should require that respondents demonstrate their compliance with the TRO and show cause why they are not in contempt.

## STATEMENT OF FACTS

On the afternoon of Friday, January 27, 2017, President Trump issued an Executive Order entitled "Protecting the Nation From Foreign Terrorist Entry Into the United States." (Dkt. 7-1.) Section 3(c) of the Executive Order, among other things, suspends for 90 days entry of all immigrants and nonimmigrants from seven majority-Muslim countries: Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen.[1] Section 3(e) and (f) contemplate expanding the list of banned countries based on future recommendations by the Secretary of Homeland Security. Section 3(g) provides that "the Secretaries of State and Homeland Security may, on a case-by-

---

[1] The order exempts persons traveling on diplomatic visas, North Atlantic Treaty Organization visas, C-2 visas for travel to the United Nations, and G-1, G-2, G-3, and G-4 visas.

case basis, and when in the national interest, issue visas or other immigration benefits to nationals of countries for which visas and benefits are otherwise blocked." The Executive Order restricts entry by immigrants from the banned countries who have lawful permanent residence ("green card") status in the United States, as well as nonimmigrants traveling on student or work visas (e.g., B-1, H-1B, L-1, O, F-1, F-2, J-1), and their family members traveling on authorized visas (e.g., B-2, J-2, F-2).

Because the Executive Order was issued on a Friday afternoon without prior notice, numerous persons from the seven banned majority-Muslim countries had already commenced their travel to the United States in reliance on their U.S. green card or a valid student or work visa, unaware of the Executive Order. Beginning Friday evening and continuing over the weekend, hundreds of people appeared at international airports throughout the United States, expecting the arrival of their friends and loved ones, only to discover that those arriving passengers were being detained incommunicado by CBP. This led to spontaneous protests and demonstrations at airports throughout the United States by persons demanding that the detainees be allowed access to the many lawyers who had also gathered at the airports to provide pro bono legal assistance to the detainees and their relatives.[2]

Petitioners in this case filed their complaint on the evening of Saturday, January 28, on behalf of two travelers from Yemen and sixty "John Doe" travelers who likewise had arrived with valid credentials but had been detained by CBP at Dulles.

---

[2] *E.g.*, *Protests Erupt at Airports Following Trump Travel Ban*, N.Y. Times (Jan. 29, 2017, 2:12 A.M.), https://goo.gl/pKOHoR; Elise Viebeck and Michael Laris, *Hundreds of lawyers descend on airports to offer free help after Trump's executive order*, The Washington Post (Jan. 29, 2017), https://goo.gl/AiGZJ3; Betsy Woodruff, *Trump's Border Patrol Defies Judge, U.S. Senator at Dulles Airport as His First Constitutional Crisis Unfolds*, The Daily Beast (Jan. 29, 2017, 8:44 a.m.), https://goo.gl/unbtlN.

At approximately 9:30 p.m., this Court issued the TRO ordering "that: a) respondents shall permit lawyers access to all legal permanent residents being detained at Dulles International Airport; [and] b) respondents are forbidden from removing petitioners—lawful permanent residents at Dulles International Airport—for a period of 7 days from the issuance of this Order." (Dkt. 3.)  Shortly before that, the United States District Court for the Eastern District of New York issued a *nationwide* TRO prohibiting CBP from removing green card and visa holders.[3]

Upon information and belief, CBP officials received a copy of both orders through multiple channels.

Later that evening, however, reports emerged from various sources that none of the detainees was being permitted access to any of the lawyers gathered at Dulles to assist them, in spite of the TRO.[4]  At approximately 11:45 p.m., Senator Corey Booker arrived on the scene and personally attempted to intercede with CBP officials, including presenting them with another copy of the TRO.  Booker reported that he was rebuffed: CBP "told me nothing, and it was unacceptable . . . . I believe it's a Constitutional crisis, where the executive branch is not abiding by the law."[5]

On Sunday, January 29, at least five other members of Congress appeared at Dulles to attempt to resolve the crisis and ensure compliance with the TRO: Representatives Robert C. "Bobby" Scott (Va-3), Don Beyer (Va-8), Gerry Connolly (Va-11), Jamie Raskin (Md-8), and

---

[3] Temporary Restraining Order, *Darweesh v. Trump*, No. 1:17-cv-480 (E.D.N.Y. Jan. 28, 2017), ECF No. 8.

[4] Woodruff, *supra* note 2.

[5] *Id*.

John Delaney (Md-6).[6] Congressman Beyer's declaration describing the events is included with this filing. He specifically went to the airport "in response to reports that CBP officials enforcing the Executive Order were detaining travelers and, contrary to the TRO, were not permitting them access to lawyers."[7] He spent more than four hours at Dulles (from 1 p.m. to 5:30 p.m.) and describes the many people he saw, awaiting the arrival of their friends and family members, as being "anxious, grief-stricken, and confused."[8]

Congressman Beyer recounts his unsuccessful efforts to find even one detainee who had been allowed access to counsel:

> Attorney after attorney complained to me that CBP would not allow them access to the holding rooms where travelers may have been detained. To my knowledge, not a single attorney was permitted access to any detained traveler. My congressional colleagues and I were also denied access to detainees.[9]

He goes on to describe how CBP officials refused not only to meet with members of Congress but to provide any assurance that they were complying with the TRO.[10] Congressman Beyer "concluded (and characterized to others) that CBP's continued enforcement of the Executive Order amounted to a constitutional crisis: four members of Congress asked CBP officials to enforce a federal court order, and we were all turned away."[11]

CBP's apparent violation of the TRO is reflected in one instance described by

---

[6] *Local Congressmen Demanded to Speak with Customs and Border Protection at Dulles, Were Refused*, DCist (Jan. 29, 2017 2:43 p.m.), http://dcist.com/2017/01/customs_and_border_protection_still.php

[7] Beyer Decl. ¶ 5.

[8] *Id.* ¶ 6.

[9] *Id.* ¶ 7.

[10] *Id.* ¶ 8.

[11] *Id.* ¶ 9.

Congressman Beyer. A detainee from Sudan with a valid green card was eventually released after the congressmen's insistence upon compliance with the TRO. Congressman Beyer recounts that "[t]he deputy police chief who was our intermediary with CBP explained that CBP had decided to release her and *so no lawyer was necessary.*"[12] Such reports are particularly disturbing in light of the Aziz petitioners' allegations in the Amended Complaint that they were removed from the United States and coerced into signing documents that petitioners believe waived their visa rights. Despite those disturbing reports, however, respondents have publicly insisted that "[u]pon issuance of the court orders yesterday [Saturday], U.S. Customs and Border Protection (CBP) immediately began taking steps to comply with the orders," and that "[w]e are and will remain in compliance with judicial orders."[13]

The Commonwealth of Virginia has independently attempted to determine which of its residents have been detained or removed from the United States, and whether respondents have complied with the access-to-counsel requirements of the TRO. On Saturday afternoon, the Governor and Attorney General of Virginia both visited Dulles and witnessed firsthand the plight of those awaiting the release of their friends and family members. On the evening of Sunday, January 31, 2017, the Attorney General of Virginia sent a letter to respondents, delivering it by email from the State Solicitor, at 8:55 p.m., to respondent Wayne Biondi and also to Dana Boente, U.S. Attorney for the Eastern District of Virginia (and, as of the evening of January 30, 2017, the Acting Attorney General). (Ex. 1.) The Attorney General sought an accounting of the number of Virginia residents detained and removed, an explanation of why respondents appear to

---

[12] *Id.* ¶ 10.

[13] DHS Statement On Compliance With Court Orders And The President's Executive Order (DHS Jan. 29, 2017), https://goo.gl/QEUC7R.

have disobeyed the TRO, and the identities of any Virginia residents remaining in custody.

Attorney General Herring requested a response "as soon as practicable, but by no later than February 1." As of the filing of this motion, no response has been received.

### THE COURT SHOULD ISSUE A RULE TO SHOW CAUSE

This Court's temporary restraining order is an injunction that is enforceable by contempt. Fed. R. Civ. P. 70(e). Respondent Department of Homeland Security does not assert that it was not bound by the TRO. To the contrary, it claims that respondents "are and will remain in compliance with the judicial orders."[14] But that conclusory statement is refuted by the public reporting of events on the ground at Dulles on Saturday evening and Sunday, as well as by Congressman Beyer's first-hand account.

Moreover, the Commonwealth has sought unsuccessfully to determine if respondents have respected the rights of its Virginia residents, including abiding by the injunction against removing persons from the United States after the TRO was issued and providing access to counsel for those being held.

Because respondents have failed without explanation to answer these eminently reasonable questions by members of Congress and the Attorney General of Virginia, it is appropriate for this Court to require respondents to demonstrate their compliance. Respondents should be required to file a written accounting of their compliance efforts by February 7. They should be required to submit sworn statements addressing, at a minimum: (1) the time on January 28, 2017 that they received actual notice of the TRO in this case and in *Darweesh*; (2) the number of air passengers on January 27, 28, and 29 arriving at Dulles International Airport with lawful permanent residence status who were removed from the United States, both before and

---

[14] DHS Statement, *supra* note 13.

after receipt of actual notice of the TRO; (3) whether any such arrivals were denied prompt access to counsel in light of reports that lawyers were refused such access and there appear to be no reported cases of any such arriving passenger being granted such access; and (4) the name and title of all government officials, if any, who instructed CBP personnel not to comply with the TRO.

It should go without saying that compliance with a court order is fundamental to the rule of law. As the Supreme Court and this Court have made clear:

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.[15]

Because respondents' conduct and refusal to account for their actions last weekend suggests disobedience of this Court's TRO, the Court should require a written accounting of how respondents actually complied. Given that the access-to-counsel requirement in the TRO is continuing, it is essential to determine as quickly as possible that respondents have complied and are complying.

---

[15] *Maness v. Meyers*, 419 U.S. 449, 458 (1975); *United States v. Al-Arian*, No. 1:08cr131, 2008 WL 3843464, at *3 (E.D. Va. Aug. 14, 2008) (Brinkema, J.) (quoting *Maness*).

## CONCLUSION

The Court should issue a rule to show cause in the form of the attached proposed order.

          Respectfully submitted,

          COMMONWEALTH OF VIRGINIA,

By:    /s/
       Stuart A. Raphael (VSB No. 30380)
       Solicitor General

       Office of the Attorney General
       202 North Ninth Street
       Richmond, Virginia 23219
       (804) 786-7240 – Telephone
       (804) 371-0200 – Facsimile
       sraphael@oag.state.va.us

Mark R. Herring
Attorney General of Virginia

Trevor S. Cox (VSB No. 78396)
Deputy Solicitor General
tcox@oag.state.va.us

Matthew R. McGuire (VSB No. 84194)
Assistant Attorney General
mmcguire@oag.state.va.us

*Counsel for Commonwealth of Virginia*

## CERTIFICATE OF SERVICE

I certify that on February 1, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the counsel of record for Petitioners and Respondents.

By:    /s/
       Stuart A. Raphael