IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| TAREQ AQEL MOHAMMED AZIZ, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | 1:17-CV-116 (LMB/TCB) |
| v. | ) | |
| | ) | |
| DONALD TRUMP, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO THE COMMONWEALTH'S
MOTION TO INTERVENE**

Pursuant to Local Rule 7(F)(1), the respondents, through undersigned counsel, hereby respectfully submit the instant memorandum of law in opposition to the Commonwealth of Virginia's motion to intervene.

## INTRODUCTION

Defendants hereby respond in opposition to the motion to intervene in the instant proceedings filed by the Commonwealth of Virginia ("the Commonwealth"). The Commonwealth seeks to intervene as a Petitioner on the same side of this litigation as Petitioners Tareq Aquel Mohammed Aziz and Ammar Aqel Mohammed Aziz, two Yemeni nationals who, according to their Amended Habeas Petition and Complaint, had been issued immediate relative visas, were seeking admission into the United States, and were detained at Washington-Dulles International Airport on January 28, 2017 and not admitted to the United States in conformance with the Executive Order of January 27, 2017 titled "Protecting the Nation from Foreign Terrorist Entry into the United States." ("the Order"). ECF 7, First Am. Compl. ¶¶ 1, 6–7.

At the outset it bears noting that the actual named parties to this litigation have reached and signed an agreement on resolving this matter without further litigation. *See* ECF 25. As the named parties notified the Court on February 1, 2017, they wish to "focus their efforts on resolving this case without further litigation" and "fully implement[ing]" their "signed agreement to resolve Petitioners claims against Defendants." *Id.* Accordingly, neither actual party to this suit has any desire or interest in continuing this litigation at this time.

Regardless, even were it appropriate to consider the Commonwealth's motion to intervene in a lawsuit no named party has any ongoing interest in pursuing and that is expected soon to be moot, it lacks any basis to intervene in this case. Because the Commonwealth lacks standing to assert any claims here and further fails to establish that its intervention is proper as a matter of right or of permission under Rule 24 of the Federal Rules of Civil Procedure, the Commonwealth's motion should be denied.

## I.  The Commonwealth's Rule 24(a) Motion Should Be Denied for Lack of Standing.

As a threshold matter, the Commonwealth lacks standing to intervene here, and its motion should be dismissed on that basis. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990).

Because status as an intervenor provides "equal standing with the original parties" and the authority to "litigate fully on the merits," 24 Charles Alan Wright &Arthur R. Miller, *Federal Practice and Procedure*, §§ 1920–21, a would-be intervenor should, like a plaintiff seeking to avail itself of the federal judiciary's adjudicatory authority, satisfy "the irreducible minima of Article III standing." *Lujan*, 497 U.S. at 899. Multiple circuit courts of appeal are in accord with this position. *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 717 F.3d 189, 193 (D.C. Cir. 2013) ("[I]ntervenors must demonstrate Article III standing . . . ."); *United States v. Metro. St. Louis*

*Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009) ("[A] party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24 . . . ."); *City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980–83 (7th Cir. 2011) ("The cases that dispense with the requirement overlook the fact that even if a case is securely within federal jurisdiction by virtue of the stakes of the existing parties, an intervenor may be seeking relief different from that sought by any of the original parties. His presence may turn the case in a new direction—may make it really a new case, and no case can be maintained in a federal court by a party who lacks Article III standing.") (internal citations and quotation marks omitted); *Cf. Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) (no standing for intervenors to pursue an appeal when the party that did not prevail in the underlying suit declined to appeal).[1]

Even assuming the Commonwealth need not demonstrate standing as part of their motion for intervention, "[i]ntervenors must show independent standing to continue a suit if the original parties on whose behalf intervention was sought settle or otherwise do not remain adverse parties in the litigation," *Dillard v. Chilton County Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2007), which is indisputably the case here. *See* ECF 25; *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d

---

[1] *But see Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 64 (2d Cir. 2016), *cert. granted sub nom. Town of Chester, N.Y. v. Laroe Estates, Inc.*, No. 16-605, 2017 WL 125674 (U.S. Jan. 13, 2017); *King v. Governor of the State of New Jersey*, 767 F.3d 216, 245–46 (3d Cir. 2014); *Perry v. Schwarzenegger*, 630 F.3d 898, 905–06 (9th Cir. 2011); *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc); *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994); *Ruiz v. Estelle*, 161 F.3d 814, 829–30 (5th Cir. 1998). The Supreme Court granted a petition for writ of certiorari earlier this month on "[w]hether intervenors participating in a lawsuit as of right under Federal Rule of Civil Procedure 24(a) must have Article III standing . . . , or whether Article III is satisfied so long as there is a valid case or controversy between the named parties . . . ." Grant of Petition for Writ of Certiorari, *Town of Chester, N.Y. v. Laroe Estates, Inc.* (No. 16-605). It is an open question in the Fourth Circuit whether a party must demonstrate Article III standing to intervene as a matter of right in a district court proceeding, *see N.A.A.C.P., Inc. v. Duplin Cty., N.C.*, No. 7:88-CV-00005-FL, 2012 WL 360018, at *3 (E.D.N.C. Feb. 2, 2012).

956, 963-966 (9th Cir. 2015) (en banc) (intervenor's right to continue suit in the absence of party on whose side intervention was permitted is contingent upon showing by intervenor that he or she fulfills Article III standing requirements of injury in fact, causation, and redressability); *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1091 (10th Cir. 2009) ("a proposed intervenor may not establish piggyback standing where the existing parties are not seeking judicial resolution of an active dispute among themselves"); *United States v. Accra Pac, Inc.*, 173 F.3d 630, 633 (7th Cir. 1999) ("[D]istrict judges can't suspend the application of Article III or grant themselves the power to issue advisory opinions one case at a time, and litigants can't stipulate to the enlargement of federal jurisdiction. A case or controversy must be present at every moment of the litigation"). Indeed, this rule makes eminent sense, given the Supreme Court's routine affirmance of the principle that Article III standing must exist at *every* stage of the litigation. *Arizonans for Official English v. Arizona,* 520 U. S. 43, 67 (1997). If the parties to this suit no longer have a live ongoing controversy and wish to settle, then the Commonwealth must establish standing on its own merits, rather than piggyback on Petitioners Article III injury.[2]

Here, the Commonwealth fails to demonstrate the irreducible minima of Article III constitutional standing, consisting of (1) "injury-in-fact, [2] causation, and [3] redressability," to

---

[2] *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 475 (4th Cir.), *cert. denied sub nom. Marsh v. Wynne*, 136 S. Ct. 693 (2015), and *cert. denied sub nom. Foster v. Wynne*, 136 S. Ct. 693 (2015), relied on by the Commonwealth in its opposition to Joint Motion to hold this case in abeyance in light of the parties final, signed settlement, is not to the contrary. That case simply holds that "dismissal of the underlying action does not automatically moot *a preexisting appeal of the denial of a motion to intervene*," because the appellate court can in fact "provide an effective remedy on appeal and therefore have jurisdiction." 792 F.3d at 475 (emphasis added). That is plainly not the issue here, where this matter is in district court, no motion to intervene has been granted or denied either way, and certainly, unlike in *Wynne*, no appeal of such a decision has been taken by the putative intervenor. Moreover, as *Wynne* itself makes clear, citing earlier authority from the Fourth Circuit, even if where *Wynne* applies, "'a court may treat intervention as a separate action'" only "'when the intervenor has an independent basis for jurisdiction.'" *Id.* at 476 (quoting *Atkins v. State Bd. of Educ.*, 418 F.2d 874, 876 (4th Cir. 1969)).

intervene under Rule 24(a). *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008). Specifically, the Commonwealth's motion does not identify a "concrete and particularized" "injury-in-fact that is 'actual or imminent, not conjectural or hypothetical.'" *Lane v. Holder*, 703 F.3d 668, 671 (4th Cir. 2012) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Rather, the Commonwealth relies on broad, conjectural allegations about the potential impact of the Order at issue in the litigation on various groups of Virginia residents. ECF No. 15, at 4–5. Nor does the state identify a specific procedural right or cognizable quasi-sovereign interest that has been injured in fact. *See Massachusetts v. Mellon*, 262 U.S. 447, 484–485 (1923); *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 (2007); *see also infra* Section II.a. These unsupported allegations are insufficient to confer standing on the Commonwealth and, thus, their motion to intervene as a matter of right should be denied on this basis.

Indeed, the link between the challenged federal action and the alleged injury to the Commonwealth must be more than "a conjecture based on speculation that is bottomed on surmise." *Wyoming ex rel. Sullivan v. Lujan*, 969 F.2d 877, 882 (10th Cir. 1992); *see Ill. Dep't Transp. v. Hinson*, 122 F.3d 370, 373 (7th Cir. 1997); *Pennsylvania v. Kleppe*, 533 F.2d 668, 672 (D.C. Cir. 1976). Any federal immigration policy will have some economic effects, and in consequence, some indirect impact on state or commonwealth revenues. Such an effect on revenues, for example, in the form of tuition payments, would not give a state or commonwealth at-large standing to challenge the policy, because, like the effect surmised here, it is "so distantly related to the wrong for which relief is sought, as not to be cognizable for purposes of standing." *Kleppe*, 533 F.2d at 672; *see Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985). This

5

is especially true in the area of immigration, an area in which the federal government enjoys plenary power. *See Kleindienst v. Mandel*, 408 U.S. 753, 765–66 & n.6 (1972).

## II. The Commonwealth Cannot Intervene As a Matter of Right

The Fourth Circuit has articulated the following test to determine whether a party may intervene as a matter of right under Rule 24(a):

> Applicants to intervene as of right must meet all four of the following requirements: (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

*Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). It is the would-be intervenor's burden to establish all four requirements. *Matter of Richman*, 104 F.3d 654, 659 (4th Cir. 1997).

Here, the Commonwealth fails to meet at least two of the four prongs of this test. The Commonwealth has not established a legally recognized interest in this litigation, nor that any such interest would be impeded or impaired by a denial of the instant motion. Therefore, the Commonwealth's motion to intervene as of right should be denied.

### a. The Commonwealth Cannot Assert a Parens Patriae Interest Against the Federal Government.

First, the Commonwealth has failed to establish a sufficient interest in the underlying action. "While Rule 24(a) does not specify the nature of the interest required for a party to intervene as a matter of right, the Supreme Court has recognized that '[w]hat is obviously meant . . . is a significantly protectable interest.'" *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). Here, because the Commonwealth fails to establish that it "stand[s] to gain or lose by the direct legal operation of the district court's judgment," *Teague*, 931 F.2d at 261, its motion must fail on this basis.

The Commonwealth asserts a *parens patriae* interest in the instant proceedings; however, such an interest cannot be recognized here. The doctrine of *parens patriae* permits a state to sue to vindicate the interests of its citizens in some instances. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982). The Supreme Court, however, made clear more than 80 years ago that a state cannot bring a *parens patriae* action against federal defendants. *See Massachusetts v. Mellon*, 262 U.S. at 485–86. In dismissing an action brought by Massachusetts to exempt its citizens from a federal statute designed to "protect the health of mothers and infants," the Court explained that the citizens of a state "are also citizens of the United States," and therefore "[i]t cannot be conceded that a state, as *parens patriae*, may institute judicial proceedings to protect citizens of the *United States* from the operation of the *statutes thereof*." *Id*. at 478, 485 (emphasis added). The Court stressed that "it is no part of [a state's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government;" "it is the United States, and not the state, which represents [its citizens] as *parens patriae*." *Id*. at 485–86.

The Supreme Court has consistently applied this principle since *Mellon* to dismiss actions brought by a state as *parens patriae* against federal defendants. *See Florida v. Mellon*, 273 U.S. 12,18 (1927) (relying on *Mellon* to dismiss Florida's challenge to a federal inheritance tax based on alleged injury to its citizens); *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966) (concluding South Carolina lacked standing as *parens patriae* to invoke the Due Process Clause or the Bill of Attainder Clause against the federal government); *see also Snapp*, 458 U.S. at 610 n.16 ("A State does not have standing as *parens patriae* to bring an action against the Federal Government."); *Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (observing that *Mellon* "prohibits" allowing a state "'to protect her citizens from the operation of federal statutes'"). And lower courts, including those in this Circuit have done the same. *See, e.g.*, *Virginia. ex rel.*

7

*Cuccinelli v. Sebelius*, 656 F.3d 253, 271 (4th Cir. 2011); *Wyoming ex rel. Sullivan v. Lujan*, 969 F.2d 877, 883 (10th Cir. 1992); *State of Nevada v. Burford*, 918 F.2d 854, 858 (9th Cir. 1990); *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353–54 (8th Cir. 1985); *Pennsylvania v. Kleppe*, 533 F.2d 668, 676–77 (D.C. Cir. 1976). Accordingly, the Commonwealth of Virginia cannot pursue intervention under a *parens patriae* theory.[3]

### b. The Commonwealth Fails to Demonstrate that Any Articulated Interest would be Impaired or Impeded by a Denial of the Instant Motion.

Further, assuming *arguendo* that the Commonwealth's *parens patraie* interest is properly asserted here, the Commonwealth fails to establish that this interest would be impaired or impeded by being precluded from intervening in the instant proceedings. The Commonwealth must show that "as a practical matter, its interest may be impaired or 'impeded' by the trial court's failure to allow intervention." *Com. of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976).

Here, however, the Commonwealth merely conclusorily states that "the problems with the . . . Order extend beyond Dulles" and that the Commonwealth would be prejudiced if the Court considers the constitutionality of the Order in this litigation without input from the Commonwealth. ECF No. 19, at 6. This argument, however, is unavailing. The Commonwealth offers no specific evidence or reasoning for why it would be prejudiced by a judgment in this case regarding the Order's effect on the actual *Petitioners*, whose putative injuries have been addressed through a signed settlement, or why the Commonwealth cannot protect any independent interests

---

[3] To the extent the Commonwealth's arguments are predicated on the potential economic repercussions of the Order felt at its public universities, ECF. No. 19, at 4–5, this is unavailing. "In general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995).

as a plaintiff in a separate lawsuit, after establishing Article III standing. *See Westinghouse*, 542 F.2d at 216. Therefore, the Commonwealth's motion should fail on this basis, as well.

### III. Permissive Intervention Should Also Be Denied.

The Commonwealth also seeks the Court's permission to intervene under Rule 24(b) of the Federal Rules of Civil Procedure. Rule 24(b) provides:

(1) In General. On timely motion, the court may permit anyone to intervene who:
  (A) Is given a conditional right to intervene by a federal statute; or
  (B) Has a claim or defense that shares with the main action a common question of law or fact.
(2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
  (A) A statue or executive order administered by the officer or agency; or
  (B) Any regulation, order, requirement, or agreement issued or made under the statute or executive order.
(3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

As a threshold matter, the Commonwealth has not identified whether it believes it may intervene under Rule 24(b)(2) as a government officer or agency. Instead, it simply asserts, without more, that its motion is timely filed, involves similar facts, and addresses the same legal questions. Therefore, Respondents assume that permissive intervention is being sought under Rule 24(b)(1)(B). However, permission to intervene under this subsection should be denied.

The Commonwealth first asserts that its motion to intervene is timely. Although the motion was filed shortly after the initiation of this litigation, due to the quick pace at which this litigation has proceeded, the case is quickly winding down. The two named individual plaintiffs are not in custody, and the government is in the process of returning them to the United States pursuant to a signed settlement agreement, *see* ECF 25, which will resolve the litigation completely, as upon the

effective date of the settlement the Petitioners have agreed to dismiss all claims in this lawsuit for all Petitioners. Thus, the motion is simply not timely with respect to the stage of the case.

The Commonwealth next asserts that its motion "addresses the same legal questions (whether the Order is constitutional)," but the petition in this case is primarily focused on the circumstances of two individuals. The legal questions as to these two individual petitioners are already in the process of being resolved, as previously stated. Furthermore, the petition in this case, and the subsequent TRO, focused on legal permanent residents who were allegedly being detained at Dulles International Airport. There are no Lawful Permanent Residents currently being detained at Dulles International Airport, and White House guidance issued subject to January 27 clarifies that legal permanent residents are not subject to the Order. *See* Memorandum to the Acting Secretary of State, The Acting Attorney General, and the Secretary of Homeland Security (Feb. 1, 2017), attached as Ex. 1 (explaining that "Sections 3(c) and 3(e)" of the Order "do not apply" to "lawful permanent residents of the United States."). Thus to the extent the Commonwealth might be understood to be asserting an interest in litigation based on Lawful Permanent Residents it has not identified for the parties or the Court but who might theoretically exist and seek admission to the United States through Dulles, such individuals are not subject to the Order. No case or controversy premised on any putative injury to them would exist, let alone one sufficiently related to the Commonwealth's interests such that it may piggypack on hypothetical claims that would be nonjusticiable and moot in any event.

The Commonwealth finally asserts that its motion involves similar facts—namely, "the status of individuals who have the legal right to be in the United States but are being denied admission or detained"—but the Commonwealth's claims do not share common questions of fact with the Petitioners'. The Commonwealth seeks to intervene on behalf of lawful permanent

residents, students, and others who have been living, working, or studying in Virginia to "vindicate its residents' civil rights." Petitioners do not even intend to reside, or attend school in Virginia. Petitioners were attempting to immigrate to the United States to live in *Michigan*, not Virginia. Therefore, these two individuals would have only a *de minimis*, if any, connection to or impact on the Commonwealth of Virginia. "The purpose for which permission to intervene may be given is that the applicant may be put in position to assert in that suit a right which it has in respect to something in dispute between the original parties." *True Gun-All Equip. Corp. v. Bishop Int'l Eng'g Co.*, 26 F.R.D. 150, 151 (E.D. Ky. 1960) (internal citations omitted). There is simply no "right" of the Commonwealth in the dispute between these parties.

The Court must also consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. In this case, intervention will only serve to slow the resolution of the original parties' case, which, as previously explained, is quickly coming to a close. The petitioners and respondent have reached a final settlement in this matter, which, once fully executed, all parties expect will completely resolve this litigation. In light of this significant development, granting the motion to intervene would only unnecessarily prolong the satisfactory resolution of this case—a waste of scarce judicial resources.

Finally, even if the Court finds that intervention is permissible, the Court has discretion to permit or deny intervention under this rule. "Permissive intervention is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Kneeland v. National Collegiate Athltic Ass'n.*, 806 F.2d 1285, 1289 (5th Cir. 1987) (citation and internal punctuation omitted); *accord Staley v. Harris Cty., Texas*, 160 F. App'x 410, 414 (5th Cir. 2005). In this case, the Court should deny the motion to intervene. In its motion to intervene the Commonwealth has not identified a single resident of

11

Virginia affected by the challenged action. The harm the Commonwealth has identified—the potential inability of some teachers and students in Virginia, and the accompanying potential loss of tuition revenue or grant money—is largely speculative.

Accordingly, for the above reasons, the Court should deny intervention under Rule 24(b), as well.

## CONCLUSION

For the foregoing reasons, the Court should deny the Commonwealth's motion to intervene.

///

///

Respectfully submitted,

DANA J. BOENTE
United States Attorney

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM PEACHEY
Director
Civil Division, Office of Immigration Litigation

By: _____/s/_____
DENNIS C. BARGHAAN, JR.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax:         (703) 299-3983
Email:  dennis.barghaan@usdoj.gov

EREZ R. REUVENI
Senior Litigation Counsel
Civil Division, Office of Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-4293
Fax:         (202) 616-8962
Email:  erez.r.reuvani@usdoj.gov

DATE: February 2, 2017                    ATTORNEYS FOR RESPONDENTS

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will transmit a true and correct copy of the same to the following:

Simon Sandoval Moshenburg
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, Virginia  22041
Email: Simon@justice4all.org

Counsel for Petitioners


Stuart Alan Raphael
Office of the Attorney General (Richmond)
202 North 9th Street
Richmond, VA 23219
804-786-7240
Fax: 804-371-0200
Email: sraphael@oag.state.va.us

Trevor Stephen Cox
Office of the Attorney General (Richmond)
202 North 9th Street
Richmond, VA 23219
(804) 786-7704
Fax: (804) 371-0200
Email: tcox@oag.state.va.us

Counsel for the Commonwealth of Virginia


///
///

Timothy J. Heaphy
Hunton & Williams LLP (DC-Pennsylvania Ave)
2200 Pennsylvania Ave NW
Washington, DC 20037
202-955-1500
Fax: 202-778-2201
Email: theaphy@hunton.com

Counsel for Osman Nasreldin and Sahar Kamal Ahmed Fadul


<u>Date</u>: February 2, 2017                                    ⎯⎯⎯⎯⎯⎯/s/⎯⎯⎯⎯⎯⎯⎯⎯
                                                                                    DENNIS C. BARGHAAN, JR.
                                                                                    Assistant U.S. Attorney
                                                                                    2100 Jamieson Avenue
                                                                                    Alexandria, Virginia 22314
                                                                                    Telephone: (703) 299-3891
                                                                                    Fax:           (703) 299-3983
                                                                                    Email:  dennis.barghaan@usdoj.gov

                                                                                    ATTORNEYS FOR RESPONDENTS