IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| TAREQ AQEL MOHAMMED AZIZ, et al., | )<br>) |
| Petitioners, | )<br>) |
| COMMONWEALTH OF VIRGINIA, | )<br>) |
| Intervenor-Petitioner, | )<br>) |
| v. | )     Civil Action No. 1:17-cv-116<br>) |
| DONALD TRUMP, President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOM AND BORDER PROTECTION; JOHN KELLY, Secretary of DHS; KEVIN K. MCALEENAN, Acting Commissioner of CBP; and WAYNE BIONDI, Customs and Border Protection (CBP) Port Director of the Area Port of Washington, Dulles. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Respondents. | ) |

## COMPLAINT IN INTERVENTION
## FOR DECLARATORY AND INJUNCTIVE RELIEF

1. The Commonwealth of Virginia seeks declaratory and injunctive relief against President Donald J. Trump and the other named Respondents for violations of the Establishment Clause of the First Amendment, the Due Process Clause of the Fifth Amendment, the Equal Protection Clause of the Fifth Amendment, and the Immigration and Nationality Act.

2. On January 27, 2017, President of the United States Donald J. Trump signed an Executive Order entitled "Protecting the Nation from Foreign Terrorist Entry into the United States" (the "Executive Order").

3. Individuals from Iran, Iraq, Syria, Sudan, Libya, Yemen, and Somalia who are

1

legal permanent residents or who were issued valid student, work, or spousal visas (e.g., B-1, B-2, H-1B, L-1, O, F-1, F-2, J-1, J-2) entitling them to be in the United States before the issuance of the Executive Order have been and will continue to be denied entry to the United States based solely on the Executive Order.

4. The actual underlying purpose of the Executive Order is to effectuate a "Muslim ban" that the President promised as a candidate for office and to prioritize the admission of persons of the Christian faith as opposed to persons of the Muslim faith.

5. By arbitrarily banning persons from Muslim-majority countries, the Executive Order violates numerous constitutional provisions, subjecting Virginia and its residents to irreparable harm.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346, 1361. This Court has remedial authority under 28 U.S.C. § 2201 *et seq*.

7. Venue is proper in this district because a substantial part of the events or omissions occurred here. 28 U.S.C. § 1391(b).

## PARTIES

8. Petitioner-Intervenor is the Commonwealth of Virginia.

9. Petitioner Tareq Aqel Mohammed Aziz is a 21-year-old citizen and national of Yemen, who was granted lawful permanent resident status.

10. Petitioner Ammar Aqel Mohammed Aziz is a 19-year-old citizen and national of Yemen, who was granted lawful permanent resident status.

11. Petitioners JOHN DOES 1-60 are approximately 60 nationals of Syria, Libya, Iran, Iraq, Somalia, Yemen, and Sudan, who are lawful permanent resident or immigrant visa holders, and who were reportedly held against their will at Washington-Dulles International

Airport (Dulles).

12. Respondents are: Donald J. Trump, President of the United States, in his official capacity; the U.S. Department of Homeland Security, a cabinet department of the United States government; John Kelly, the Secretary of the Department of Homeland Security, in his official capacity; the U.S. Customs and Border Protection, an agency within the Department of Homeland Security; Kevin K. McAleenan, Acting Commissioner of Customs and Border Protection, in his official capacity; and Wayne Biondi, Customs and Border Protection Port Director of the Area Port of Washington Dulles, in his official capacity.

## FACTUAL ALLEGATIONS

**A. The Executive Order and its implementation.**

13. On January 27, around 4:30 p.m., President Trump signed the Executive Order.

14. The stated purpose of the Executive Order is to ensure that the United States is "vigilant during the visa-issuance process to ensure that those approved for admission do not intend to harm Americans and that they have no ties to terrorism."

15. The Executive Order asserts that "[n]umerous foreign-born individuals have been convicted or implicated in terrorism-related crimes since September 11, 2001, including foreign nationals who entered the United States after receiving visitor, student, or employment visas."

16. The visa-issuance process was modified to be more stringent after the September 11, 2001 terrorist attacks.

17. Section 3(c) of the Executive Order bans for 90 days certain classes of individuals from entering or reentering the United States based on their national origin.

18. Individuals from the following countries are banned from entering the United States unless they are a U.S. citizen or possess a diplomatic visa, North Atlantic Treaty Organization visa, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, and G-4 visa:

3

Iraq, Iran, Syria, Libya, Somalia, Yemen, and Sudan.

19. Iraq, Iran, Syria, Libya, Somalia, Yemen, and Sudan are majority-Muslim countries.

20. No person from Iraq, Iran, Syria, Libya, Somalia, Yemen, or Sudan in the United States as a lawful permanent resident or under a work, student, or spousal visa has been implicated in a terrorist plot in the United States.

21. After the Executive Order was signed, numerous lawful permanent residents, workers with valid employment visas, students with valid student visas, spouses with valid spousal visas were detained at airports across the United States and the world.

22. Petitioners were detained at Dulles International Airport ("Dulles") in Dulles, Virginia.

23. It is believed that at least 50 to 60 other lawful permanent residents were likewise detained at Dulles, but the exact number is unknown because Respondents declined to release information about the number of person being held at Dulles.

24. Upon information and belief, residents who are lawful permanent residents or who were issued valid student, work, or spousal visas were held against their will at Dulles.

25. On January 28, this Court issued a temporary restraining order (TRO). (ECF No. 3.)

26. The TRO ordered that (1) "respondents shall permit lawyers access to all legal permanent residents being detained at Dulles," and (2) "respondents are forbidden from removing petitioners . . . for a period of 7 days."

27. Upon information and belief, none of the travelers who were detained against their will at Dulles on January 29 was permitted access to lawyers who were standing by on

scene, contrary to the TRO.

28. The inability of lawyers to meet with individuals held at Dulles hindered the Commonwealth's ability to determine how many Virginia residents were detained and released or removed from the United States despite being a lawful permanent resident or possessing a valid visa.

29. On January 29, Virginia Senators Mark R. Warner and Tim Kaine formally requested additional information about the Executive Order from Respondent Kelly.

30. Senator Warner and Senator Kaine believed that "[t]he broadness of the [Executive Order] suggests this is a policy targeting Muslims, an approach that national security experts have testified could harm, not help, our national security interests."

31. On January 29, Governor of Virginia Terence R. McAuliffe directed his administration to send a letter to the White House Director of Intergovernmental Affairs.

32. On January 29, Attorney General of Virginia Mark R. Herring formally requested additional information about the detention of Virginia residents from the United States, including from U.S. Attorney (now Acting Attorney General) Dana Boente, Respondent John Kelly, Respondent Wayne Biondi, and Respondent Kevin McAleenan. (ECF No. 19-1.)

**B. The impact of the Executive Order on Virginians who are lawful permanent residents or who are authorized to reside here under validly issued visas.**

33. The Executive Order has had a direct and substantial impact on Virginia and its public universities, faculty, and students who are foreign-born.

34. Many foreign students go on to be significant figures in Virginia and in their communities, such as Ángel Cabrera, the president of George Mason University, the largest public university in Virginia.

35. Virginia Commonwealth University has a satellite campus in Qatar that hosts

5

exchange programs with students in the United States.

36. Virginia has 14 publicly supported universities and colleges and 23 community colleges.

37. On information and belief, more than 350 students at Virginia Commonwealth University, Virginia Tech, George Mason University, the University of Virginia, and William & Mary are directly and adversely affected by the Executive Order.

38. These students will be unable to travel abroad for academic or personal reasons as permitted by their visas because the Executive Order will prevent them from reentering the United States.

39. At least two students were known to be abroad when the Executive Order was issued and now cannot enter the United States.

40. An Iranian doctoral student at a Virginia university had been approved and cleared for a visa to return to the United States to defend his dissertation, but was blocked from doing so by the Executive Order.

41. A Libyan undergraduate at a Virginia university who was traveling for family reasons was prevented from boarding a plane from Istanbul, Turkey back to the United States and has been unable to return.

42. The Executive Order poses a significant chilling effect on other out-of-country students who fear traveling abroad due to the possibility that they will be denied reentry.

43. The Executive Order directly harms Virginia universities who will not be able to attract academic talent that enriches their campuses and advances their educational mission.

44. For example, foreign-born faculty teaching at Virginia universities under a valid visa typically have specialized expertise that cannot be easily replaced.

45. The harm to faculty and the teaching mission of Virginia universities is already being felt where three foreign scholars from a country banned by the Executive Order abandoned their plans to visit the university, despite having valid J-1 visas and having visited the United States previously.

46. Another university has had two visiting scholars with valid J-1 visas cancel their plans to be at the school for the spring semester.

47. The Executive Order financially harms Virginia universities who depend on tuition dollars from out-of-state and out-of-country students.

48. Two Sudanese applicants to a Virginia university have abandoned their plans to enroll in foreign language programs at the university, and a number of Iranian students have withdrawn applications to various university engineering programs.

49. The amount of tuition lost due to the Executive Order is not quantifiable because the order discourages out-of-country students from applying to Virginia universities in the first instance.

50. The Executive Order jeopardizes grants and contracts that fund research at Virginia's universities.

51. The inability of a number of graduate students and faculty to travel abroad will cause a gradual decrease in research collaborations with other universities and groups as well as funding.

52. The Executive Order also impairs Virginia's economy by restricting the travel of foreign students and foreign workers to Virginia, and impairing their ability to reside in Virginia, depriving the Commonwealth of their talents and contributions as residents and taxpayers, and withholding their labor from Virginia's businesses.

## CLAIMS FOR RELIEF

**A.     Claim 1: Violation of the Due Process Clause of the Fifth Amendment.**

53.     The Commonwealth re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this complaint.

54.     The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving individuals of their liberty interests without due process of law.

55.     Lawful permanent residents and individuals with validly issued visas have a legally protected right in not having their status revoked arbitrarily based on their national origin.

56.     Section 3 of the Executive Order violates the legally protected rights of lawful permanent residents and individuals with valid visas by eliminating their status without according them any process.

57.     When Congress has granted statutory rights and authorized procedures applicable to arriving and present immigrants, due process rights attach to those statutory rights.

58.     Section 3 of the Executive Order conflicts with the statutory rights and procedures provided by Congress.

59.     In issuing and implementing the Executive Order, Respondents have violated the procedural due process guarantees of the Fifth Amendment.

60.     Respondents' violation of the Due Process Clause is causing ongoing and irreparable harm to Virginia residents.

**B.     Claim 2: Violation of the Establishment Clause of the First Amendment.**

61.     The Commonwealth re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this complaint.

62.     The Establishment Clause of the First Amendment prohibits the federal government from officially preferring one religion over another.

63. In light of the numerous statements given by the President and his advisors concerning their intent surrounding the purpose of the Executive Order, and their goals in its enforcement, Section 3(c) is intended to fulfill the President's pledge as a candidate to implement a moratorium on Muslim travel to the United States, and to disfavor Islam and to favor Christianity.

64. Respondents' actions in issuing and enforcing the Executive Order violate the Establishment Clause of the First Amendment.

65. Respondents' violation of the Establishment Clause is causing ongoing and irreparable harm to Virginia residents.

**C.     Claim 3: Violation of the Equal Protection Clause of the Fifth Amendment.**

66. The Commonwealth re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this complaint.

67. The Due Process Clause of the Fifth Amendment prohibits the federal government from denying equal protection of the laws.

68. The Executive Order targets individuals based on their national origin without justification.

69. The Executive Order was motivated by animus and a desire to harm Muslims.

70. No substantial federal interest justifies the discriminatory terms and blanket application of the Executive Order.

71. Respondents have violated the equal protection guarantee of the Fifth Amendment based on their issuance and enforcement of Section 3 of the Executive Order.

72. Respondents' violation of the equal protection guarantee of the Fifth Amendment is causing ongoing and irreparable harm to Virginia residents.

### D. Claim 4: Violation of the Immigration and Nationality Act.

73. The Commonwealth re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this complaint.

74. The Immigration and Nationality Act and its implementing regulations entitle lawful permanent residents to reenter the United States without need of a waiver and entitles individuals possessing a valid visa issued by a consular official to approach the border and seek entry. *See, e.g.*, 8 U.S.C. §§ 1151, 1201, 1225, and accompanying regulations.

75. Respondents are violating the Immigration and Nationality Act by insisting that lawful permanent residents require a waiver of Section 3(c) of the Executive Order to enter the United States and by denying individuals with valid visas the right to board a plane bound for the United States such that they may present themselves at the border and seek entry.

### E. Claim 5: Violation of the Religious Freedom Restoration Act.

76. The Commonwealth re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this complaint.

77. The Religious Freedom Restoration Act (RFRA) prohibits the federal government from substantially burdening the exercise of religion unless it is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000bb *et seq.*

78. Section 3 of the Executive Order places a substantial burden on Muslims' ability to practice their religion by, among other things, restricting their ability to engage in religious travel abroad and, in the case of residents traveling abroad, to return freely to the United States to attend services in their own faith communities. Because the Executive Order does not further a compelling governmental interest by the least restrictive means, Respondents' enforcement of the Executive Order violates RFRA.

# PRAYER FOR RELIEF

The Commonwealth respectfully requests the following relief from the Court:

A. A declaratory judgment that Section 3(c) of the Executive Order violates the Establishment Clause of the First Amendment and a preliminary and permanent injunction against its enforcement.

B. A declaratory judgment that Section 3(c) of the Executive Order violates the Due Process Clause of the Fifth Amendment and a preliminary and permanent injunction against its enforcement.

C. A declaratory judgment that Section 3(c) of the Executive Order violates the equal protection guarantee of the Fifth Amendment and a preliminary and permanent injunction against its enforcement.

D. A declaratory judgment that Section 3(c) of the Executive Order is unlawful under the Immigration and Nationality Act and a preliminary and permanent injunction against its enforcement.

E. A declaratory judgment and injunction that Section 3(c) of the Executive Order violates RFRA and a preliminary and permanent injunction against its enforcement.

F. An award of reasonable costs and attorney's fees to the extent permitted by law; and

G. All other equitable relief to which the Commonwealth may show itself to be entitled.

Respectfully submitted,

COMMONWEALTH OF VIRGINIA,

By: _____/s/_____

<pre>
                              Stuart A. Raphael (VSB No. 30380)
                              Solicitor General

                              Office of the Attorney General
                              202 North Ninth Street
                              Richmond, Virginia 23219
                              (804) 786-7240 – Telephone
                              (804) 371-0200 – Facsimile
                              sraphael@oag.state.va.us
</pre>

Mark R. Herring
Attorney General of Virginia

Trevor S. Cox (VSB No. 78396)
Deputy Solicitor General
tcox@oag.state.va.us

Matthew R. McGuire (VSB No. 84194).
Assistant Attorney General
mmcguire@oag.state.va.us

*Counsel for the Commonwealth of Virginia*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the counsel of record for Petitioners and Respondents.

<pre>
                      By:    /s/
                             Stuart A. Raphael
</pre>